UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

Case No. 8:25-cr-00263-SDM-SPF

v.

CORTEZ HEARD

### UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant U.S. Attorney, hereby submits its sentencing memorandum as to Mr. Cortez Heard. As further explained below and pursuant to 18 U.S.C. § 3553(a), the United States respectfully submits that a guidelines-sentence of 33 months is appropriate in this case.

### I.    Fact Summary

As discussed in the plea agreement between the parties (doc. 5), and Heard's presentence investigation report (doc. 25), between approximately October 26, 2020, to March, 14, 2023, Heard was an employee of Company-1, an American industrial conglomerate headquartered in Charlotte, North Carolina.

In or around January 2021, Heard was tasked with refreshing and updating various network hardware at multiple Company-1 sites, to include an industrial plant in Clearwater, Florida, which is located within the MDFL. Company-1 arranged with Company-2 to lease the equipment needed to complete the network upgrade.

Heard was in charge of determining what equipment was needed, ordering the Company-2 equipment, and directing shipments of equipment to installation sites.

In that capacity, Heard fraudulent arranged for Company-2 network equipment—primarily routers and switches, but also other information technology ("IT") peripherals—to be sent directly from Company-2's warehouse in Chicago, Illinois, to an IT resale business in Georgetown, Texas. This equipment was intended to be shipped to Company-1 sites in Georgia, Florida, and elsewhere. Upon receipt, the IT resale businesses then paid Heard directly for the diverted/stolen equipment.

In total, between January 2021, and December 2022, Heard stole approximately 352 routers and network switches, valued at approximately $2,655,383.98 from Company-1 in this manner. This loss valuation includes $1,539,196.20 in hardware costs, $879,915 in support costs, $205,368.34 in buyout costs, and $30,904.44 in purchase costs. Financial records showed that Heard received approximately $1.1 million in payments from the IT resale businesses, which represents the proceeds of his criminal conduct. Heard lived in the Middle District of Florida and worked for Company-1 remotely from his home during the relevant time period.

The above is merely a summary of some of the events, some of the persons involved, and other information pertaining to this case. It does not include, nor is it intended to include, all of the events, persons involved, or other information relating to this case.

## II.    Procedural History

On June 2, 2025, the United States filed an Information charging Heard with one count of Theft of an Interstate Shipment, in violation of 18 U.S.C. § 659. Doc. 1. Heard made his initial appearance in Tampa, Florida, on July 10, 2025, whereupon he pleaded guilty to the offense in connection with a plea agreement between the parties. Doc. 5, 11 and 18. This Court has scheduled sentencing to take place Monday, October 21, 2025. Doc. 21.

## III.    Pre-Sentence Investigation Report

On October 14, 2025, the U.S. Probation Office issued its final PSR. Doc. 25. It determined Heard's applicable guideline-range for the underlying offenses to be 30 to 37 months' imprisonment, based upon an adjusted total-offense level of 19, and a criminal history category of I. Doc. 25 at 80. Neither the United States nor defendant Heard have asserted an objection to the material information, sentencing classifications, sentencing guideline ranges, or policy statements contained within the PSR; however, it is anticipated that Mr. Heard will seek a downward variance based upon 18 U.S.C. § 3553(a) factors and other sentencing departure issues.

## IV.    Consideration of Defendant Cooperation

As laid out in the plea agreement between the parties (doc. 5), Mr. Heard agreed to cooperate fully with the United States in the investigation and prosecution of other persons. The United States agreed to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policies of the United States Attorney for the Middle District of Florida, warranting the filing of a motion

3

at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG § 5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553€, or (3) both. As discussed in the plea agreement, Heard understood that the determination as to whether "substantial assistance" has been provided, or as to what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agreed that he cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

As of the date of this sentencing memorandum, Heard has proffered with the government in support of other investigative leads. However, Heard has failed to make himself available to the United States in a manner consistent with "substantial assistance" criteria under the policies of the United States Attorney for the Middle District of Florida. To the extent that Heard has truthfully proffered to the government, the United States believes the impact of this mitigation is adequately reflected in the "acceptance of responsibility" adjustments to Heard's guidelines. Therefore, the United States is not exercising its sole prerogative to file a motion for downward departure under USSG § 5K1.1 prior to sentencing.

## V.     Argument in Support of a Guideline Sentence

The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 41 (2007). Although this Court

may not presume that a guidelines-range sentence is reasonable, the Sentencing

Guidelines remain a significant and pivotal component of the sentencing process.

*United States v. Delva*, 922 F.3d 1228, 1257 (11th Cir. 2019); *United States v. Hunt*, 526

F.3d 739, 746 (11th Cir. 2008) ("[W]hile we do not presume that a sentence falling

within the guidelines range is reasonable, we ordinarily expect it to be so."). This

Court, therefore, "must first calculate the Guidelines range, and then consider what

sentence is appropriate for the individual defendant in light of the statutory

sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former

with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891–92 (2009).

18 U.S.C. § 3553(a)(1) provides that, in determining a sentence, courts must

consider the nature and circumstances of the offense, as well as the history and

characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include

the need for the sentence to reflect the seriousness of the offense, to promote respect

for the law, to provide just punishment for the offense, to afford adequate deterrence

to criminal conduct, to protect the public from further crimes of the defendant, and

to provide the defendant with needed education or vocational training, medical care,

or other corrective treatment in the most effective manner. Heard's conduct,

considered in conjunction with the sentencing factors set forth in 18 U.S.C. §

3553(a), calls for a guideline-sentence.

### a. Nature and Circumstances of Offense

The nature and circumstances of Heard's conduct in this case is significant. Heard maintained a campaign of falsehoods over an extended period, resulting in the theft and resale of millions of dollars' worth of Company-1 networking equipment. Heard took advantage of the autonomy and special trust placed in him by Company-1 to properly manage the shipment and installation of their IT equipment. Employee theft has serious deleterious effects on the growth and sustainability of corporations, even large corporations such as Company-1.

Looking to Mr. Heard, his conduct is aggravated by the fact that he had, in 2019, pleaded guilty to a Florida State offense of Grand Theft over $20,000 dollars, in Seminole County, Florida. Heard was sentenced to 180 months' of probation for this offense, but violated his probation in July 2021, in or around the time that his conduct in the present case was taking place. That Heard was undertaking the actions that comprise this case while on probation for another theft offense evinces a lack of respect for the law and a willingness to engage in recidivism.

## VI.   Conclusion

This Court should sentence Mr. Heard to a guidelines sentence of 33 months in this case. This sentence is reasonable in light of the application of the 18 U.S.C. § 3553(a) factors, because it reflects the nature and circumstances of the offense, the seriousness of his crime, promotes respect for the law, and affords adequate deterrence to future criminal conduct.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:   */s/ Adam J. Duso*
Adam J. Duso
Assistant United States Attorney
Florida Bar # 1026003
400 N. Tampa St., Ste. 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
Email: adam.duso@usdoj.gov

**U.S. v. Cortez Heard**                    **Case No. 8:25-cr-00263-SDM-SPF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2025, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to counsel of record.

<u>/s/ Adam J. Duso</u>
Adam J. Duso
Assistant United States Attorney
